**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

**IMAGEWORKS C317, LLC**                                                           **PLAINTIFF**


**v.**                          **Case No. 5:24-CV-05138-DCF**


**WORKSPACE DEVELOPMENT LLC, *et al.***                      **DEFENDANTS**


<u>**OPINION AND ORDER**</u>

Before the Court is Defendants' Motion for Summary Judgment (Doc. 58).

For the reasons given below, Defendant's Motion is DENIED.

**I.      BACKGROUND**

This case involves allegations of intentional interference with business

expectancy.  (Doc. 31, Amended Complaint).  It was filed in the Fayetteville

Division of the Western District of Arkansas on July 2, 2024, (Doc. 1), and

reassigned to the undersigned on February 19, 2026 (Doc. 49).  It is set for a jury

trial in Fort Smith on September 21, 2026.  (Doc. 125).

This matter arises from facts surrounding financial and business harm

allegedly caused by the unlawful disruption of a longstanding business

relationship.  (Doc. 18, p. 1).  The parties in this case are commercial interior

design and furniture suppliers who both use Steelcase products in their designs.

(*Id.* at 3).  Steelcase assigns Authorized Dealers to each geographic region in the

1

United States and outlines specific expectations and responsibilities for them based on standards of fairness set out in an industry "Blue Book."  (Doc. 31, p. 8).

Plaintiff ImageWorks, the sole Steelcase Authorized Dealer for Arkansas, asserts that it made specific investments in Northwest Arkansas at Steelcase's urging so that it could sell its furniture to Walmart.  (*Id.* at 5-6).  To that end, Steelcase extended a substantial interest-bearing loan to Plaintiff.  (*Id.* at 6).  Plaintiff contends that Steelcase represented to Plaintiff that it would be the Dealer of Record to Walmart, meaning that sales to Walmart were not subject to competitive bids by other Steelcase Authorized Dealers.  (*Id.*).  To secure Walmart's business, it relied on Steelcase's understandings, promises, and express assurances when it invested more than $1 million in the Northwest Arkansas location and showroom.  (*Id.* at 7).  After performing work, fulfilling millions of orders, and actively supporting Walmart projects across multiple states, the Steelcase-Walmart-ImageWorks account was terminated.  (Doc. 84, pp. 10, 13).

Plaintiff alleges that, because Defendants Workspace, *et al.* were Steelcase Authorized Dealers for the West Coast, not Arkansas, they unlawfully and tortiously interfered with Plaintiff's established Dealer of Record relationship with Walmart.  (Doc. 31, pp. 20-21).  Plaintiff contends that Defendants used

2

deceptive and improper tactics to divert Walmart's current and future business from Plaintiff, taking contracts and business opportunities that rightfully belonged to Plaintiff based on years of effort and financial investment. (*Id.* at 21).

Defendants consist of the following parties: Workspace Development LLC, d/b/a One Workplace – WA, d/b/a Porter; One Workspace L. Ferrari, LLC, d/b/a One Workplace; Kyle Haakenson; and Mark Baker. Defendants collectively deny improperly interfering with Plaintiff's business expectancy because, according to Defendants, Plaintiff did not have a business expectancy. (Doc. 18, p. 3). While Plaintiff hoped for business expectancy, Walmart selected Defendants over Plaintiff and others who competitively bid for the work. (*Id.*). Defendants assert that Steelcase does not appoint any dealers as Dealer of Record for any customer. (Doc. 63, p. 7). Rather, based on a long-standing relationship with a key Walmart representative, Amanda Wilson, Defendants engaged in the bidding process and ultimately secured Walmart's business. (Doc. 18, p. 3). And they did so without making any false representations to Steelcase or Walmart. (*Id.*).

On March 27, 2026, Defendants filed the instant motion. (Doc. 58). They assert that the undisputed material facts demonstrate the following: 1) ImageWorks did not have a valid business expectancy in future sales by

3

Steelcase to Walmart; 2) ImageWorks' alleged business expectancy contained contingencies, which bars a claim for tortious interference under Arkansas law; 3) ImageWorks has provided no proof that Defendants' actions were the proximate cause of ImageWorks' loss of any valid business expectancy; 4) ImageWorks has provided no evidence to show that Defendants acted improperly; and 5) if this case is not dismissed in its entirety, ImageWorks' damages claim must be based on ImageWorks' losses, not Defendants' profits. (*Id.* at 2-3). Plaintiff responded on April 10. (Doc. 84). Defendants replied seven days later. (Doc. 88). Being fully briefed, the motion is now ready for decision.

## II. LAW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court must review the facts in the light most favorable to the opposing party and give that party the benefit of any inferences that logically can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1997). The moving party bears the burden of proving the absence of a genuine dispute of material fact and that it is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586-87 (1986).

Once the moving party has met its burden, the non-moving party must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(c)). "[T]he mere existence of a scintilla of evidence in support of the [moving party's] position will be insufficient" to survive summary judgment. *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, for there to be a genuine issue of material fact that would preclude summary judgment, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby*, 477 U.S. at 248).

## III.   DISCUSSION

To prove a claim of tortious interference with business expectancy, a plaintiff must show 1) the existence of a valid business expectancy; 2) knowledge of the expectancy on the part of the interfering party; 3) intentional interference inducing or causing a breach or termination of the expectancy; 4) and resultant damage to the party whose relationship has been disrupted. *K.C. Properties of N.W. Arkansas, Inc. v. Lowell Inv. Partners, LLC*, 280 S.W.3d 1, 11 (Ark. 2008) (collecting cases). Defendants insist that no genuine dispute of

material fact exists in this case.  The Court disagrees for the reasons set forth below.

## 1. Business Expectancy

There is a genuine dispute as to whether ImageWorks had a valid business expectancy in continued sales to Walmart.   Any prospective business relationship that would be of pecuniary value constitutes a valid business expectancy, as an element for a claim of tortious interference.  *See Baptist Health v. Murphy*, 373 S.W.3d 269, 282 (Ark. 2010).  Arkansas law does not require the existence of a contract, exclusivity, or direct privity with the ultimate customer to maintain an action for tortious interference with business expectancy.  *See Mid-South Beverages, Inc. v. Forrest City Grocery Co., Inc.*, 778 S.W.2d 218, 218 (Ark. 1989).

That ImageWorks earned commissions on Steelcase sales to Walmart is undisputed; that commission stream, Plaintiff argues, is the pecuniary interest this tort protects.  (Doc. 84 at 8).  Defendants argue that ImageWorks had no agreement with Walmart and that Steelcase gave ImageWorks no valid expectancy in its future Walmart business.  (Doc. 62, pp. 6-7).  They contend that Steelcase does not demand exclusivity or territorial restraints on its dealers and, therefore, ImageWorks had no established right to be free of competition from other dealers.  (*Id.* at 8-10).

6

Plaintiff contends that Steelcase's model is structured and channel-controlled such that a dealer must gain legitimate access to a market and its customers, which Defendants failed to do.  (Doc. 84, pp. 7-8).  Plaintiff's corporate representative, Rhonda Bradley, testified, "If it were a free for all . . . I wouldn't have bought that dealership from Steelcase, there would have been no point.  I would have had access to the market without paying a dime for it, and that wasn't the case." (*Id.*).

Deposition testimony shows that ImageWorks was the recognized "source" for Steelcase products and that Walmart "would go through that store;" that certain product lines were chosen because of ImageWorks' promotion and sales; and that "98.9999 percent of all decisions" had been made about the Steelcase-Walmart-ImageWorks business before Defendants got involved. (Doc. 84, pp. 5-9).  Plaintiff points to a specific Walmart account, a 14-year course of dealing, millions in prior sales, active projects, and Walmart's already-decided specification for the campus project.  (*Id.* at 8-9).  Based on these facts, Plaintiff has shown that a genuine dispute exists as to whether it had a concrete expectancy in commissions on every Steelcase sale to Walmart through the established dealer channel.  (*Id.*).

Further, there is a genuine issue of material fact as to whether any expectancy was contingent.  There can be no claim for tortious interference

where a business expectancy is subject to a contingency. *See Windsong Enters. Inc. v. Upton*, 233 S.W.3d 145, 152 (2006). Defendants contend that ImageWorks' expectancy was contingent on Steelcase's decision to continue doing business with ImageWorks, Steelcase's decision to continue serving the Walmart account using ImageWorks, and Walmart's decision to continue purchasing Steelcase products. (Doc. 62, pp. 11-13).

As to Defendants' first two alleged contingencies, Plaintiff clarifies that it does not claim interference with its relationship with Steelcase. (Doc. 84, p. 10). As to Walmart's decision to continue purchasing Steelcase products, Plaintiff insists that it would have continued servicing Walmart but for Defendants' alleged interference, which was the "key factor" in the sudden displacement of ImageWorks for Defendants. (*Id.* at 11). Plaintiff points to the $10 million pro forma order, which was a procurement step followed by sales, to show the purchasing stream. (*Id.*). Because Arkansas law requires only a reasonably certain expectation of a continuing business relationship, Plaintiff argues that the law protects such relationships and disfavors improper interference. (*Id.* at 12). Thus, the Court finds that a reasonable jury could find that ImageWorks had a valid business expectancy in selling Steelcase to Walmart.

## 2. Proximate Cause

It is for the jury to decide whether Defendant's conduct was an intentional

interference inducing the termination of the business relationship. To satisfy the element of causation, there must be proof that the third party either failed to continue or refused to enter a contractual relationship with the claiming party as a result of the defendant's unauthorized conduct. *See Navorro-Monzo v. Hughes*, 763 S.W.2d 635, 636 (Ark. 1989). Defendants first assert that ImageWorks' relationships with Steelcase and Walmart remain intact. (Doc. 62, pp. 15-16). More importantly, according to Defendants, Plaintiff has not presented any evidence to show that Walmart would have continued the Steelcase-Walmart-ImageWorks relationship but for any unauthorized conduct by Defendants. (*Id.* at 16-17). They insist that the choice to retain Defendants was not Wilson's decision, but a team decision simply informed by Wilson. (*Id.* at 16).

Plaintiff first contends that ImageWorks' relationship selling Steelcase to Walmart has ended. (Doc. 84, p. 13). It also offers deposition testimony and other evidence to allege that but for Defendants' interference, it would have continued servicing Walmart. (*Id.* at 13-14). A Steelcase vice president testified that Amanda [Wilson] was the key factor in ImageWorks no longer working with Walmart. (*Id.* at 14). Defendants agreed that they "would not have earned any of the Walmart business" but for their friendship with Wilson. (*Id.*).

Additionally, a former Walmart executive testified that certain facts

9

surrounding Wilson's relationship with Defendants—a Mexico trip, cabin and home stays, structural work, home repairs, concert tickets, and resume help—would have likely mandated Wilson's recusal from the Walmart-Steelcase-ImageWorks portfolio and disqualified Defendants as a vendor. (*Id.* at 14-15). Thus, a reasonable jury could find that Defendants' interference was the proximate cause of ImageWorks' loss.

### 3. Improper Conduct

Next, there is a genuine issue of material fact as to whether Defendants' conduct was improper. In determining whether conduct is improper under tortious interference with business expectancy, courts consider the following: 1) the nature of the conduct; 2) motive; 3) interests of the party with which the conduct interferes; 4) interests sought to be advanced; 5) social interests in protecting freedom of action and contractual interests; 6) proximity or remoteness of the actor's conduct to the interference; and 7) the relations between the parties. *See Stewart Title Guar. Co. v. American Abstract & Title Co.*, 215 S.W.3d 596, 549-50 (Ark. 2005).

Defendants characterize their conduct as a competitor doing its best to secure business. (Doc. 62, pp. 19-21). Wilson was hired by a Walmart executive who had worked with her at another company. (*Id.* at 19). Defendants assert that she was hired specifically for her experience with a network of design teams

that would support the Walmart home office and campus projects. (*Id*. at 19-20). She was encouraged "to use her network of talented and trusted vendors." (*Id*. at 16). Defendants Haakenson and Baker, cofounder and former CEO, respectively, have been very good friends and business associates with Wilson for many years. (*Id*. at 20). As to Steelcase's pricing agreement with Walmart, Defendants insist that it was provided to them properly and not for the purpose of interfering with ImageWorks' expectancy. (*Id*. at 21).

Alleging a scheme of unfair evasion of competition, Plaintiff points to expert testimony that Defendants violated Walmart's Code of Conduct on conflicts, gifts, data, supplier integrity, and procurement practices and that their conduct was a "substantial deviation" from ethics standards. (Doc. 84, p. 18). The close personal relationship between Wilson and Defendants Haakenson and Baker was not properly disclosed to Walmart Ethics. (*Id*. at 14-15). Walmart leadership-level personnel did not know about a trip to Mexico, cabin and home stays, structural work, home repairs, concert tickets, and resume help exchanged among the three. (Doc. 84, p. 14). This level of closeness was beyond an arm's length professional one and would have mandated Wilson's recusal and Defendants' disqualification as vendor. (*Id*. at 14-15). Instead, after making the call to transfer all business from ImageWorks to Defendants, Wilson texted Defendants "you're welcome." (*Id*.).

Plaintiff asserts that the record supports a finding of impropriety. (*Id.* at 16-22). Defendants asked Steelcase "How big of a political nightmare would it be if I weaseled my way in there?" (*Id.* at 20). Following a visit to Northwest Arkansas, Defendants texted amongst themselves "[l]ots of money getting spent [with] little scrutiny or diligence. No one will see us coming." (*Id.*). Defendants asked for information from Steelcase that was not publicly available "without alerting the masses." (*Id.* at 19). They received it with the language "you didn't get this from me" and a contemporaneous text "I just sent you something. It didn't come from me. Don't even let Baker or other OWP folks know I sent it to you. My butt would be in big trouble at Steelcase if anyone found out." (*Id.*).

We agree with Plaintiff that it is for the jury to determine Defendants' motive, ImageWorks' interests, and whether Defendants' conduct interfered with those interests.

### 4. Damage

Finally, there is a genuine dispute as to the calculation of damages. A jury may determine the weight and value to give the testimony of a party's economics expert on the proper method to determine damages. *See Stewart*, 215 S.W.3d at 609. Defendants argue that ImageWorks had no potential orders in the "pipeline" or even in process and, as such, should not be allowed to claim such speculative damages. (Doc. 62, p. 24).

Plaintiff argues that its expert calculates ImageWorks' loss as compensatory damages.  (Doc. 84, p. 23).  The expert takes ImageWorks' lost net income using its own commission rates, margins, and expense structure.  He then takes Defendants' actual Walmart sales as the measure of displaced business.  (*Id.*).  Applying ImageWorks' own economics to those transactions and deducting ImageWorks' own incremental costs, the expert arrives at ImageWorks' lost net income, not Defendants' profit.  (*Id.*).  Plaintiff argues that a reasonable jury could award the damages ImageWorks' expert calculates.  (*Id.* at 22-25).  The Court agrees.  Thus, Plaintiff has presented specific facts showing that there is a genuine issue for trial.

## IV.   CONCLUSION

For the foregoing reasons, the Court finds that Defendants have not met their burden to prove the absence of a genuine dispute of material fact and that they are entitled to judgment as a matter of law in this case.  **IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment (Doc. 58) is **DENIED**.

**IT IS SO ORDERED** this 13th day of July 2026.

*/s/ David Clay Fowlkes*

DAVID CLAY FOWLKES
UNITED STATES DISTRICT JUDGE

13